**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| RICHARD F.,<br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>        Defendant. | Case No. 1:23-cv-01148-JES-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Brief (Doc. 9), the Defendant's Brief (Doc. 13), and the Plaintiff's Reply Brief (Doc. 14).  This matter has been referred for a report and recommendation.  For the reasons stated herein, the Court recommends the Plaintiff's request to remand the unfavorable decision of the Defendant, Martin O'Malley, Commissioner of Social Security, be denied.[1]

**I**

Richard F. filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on August 8, 2016, alleging disability beginning on November 17, 2000 (later amended to February 8, 2015).  Richard sustained a work injury in 2000 which resulted in a series of six back surgeries over the years and, eventually, he developed failed back syndrome.  He had previously received DIB as of November 17, 2000 until his disability ceased as of December 1, 2012 due to medical improvement.  In his 2016 applications, Richard claimed chronic back and radiating leg pain, post open reduction and internal fixation

---

[1] References to the pages within the Administrative Record will be identified by AR [page number].  The Administrative Record appears at (Doc. 6) on the docket.

(ORIF) right tibia/fibula fracture, chronic bilateral leg pain, a left torn rotator cuff, bipolar disorder, bladder cancer, chronic fatigue, and COPD limited his ability to work.  AR 909.

Richard's 2016 applications were denied initially and upon reconsideration and an Administrative Law Judge, after a hearing, later issued an unfavorable decision in October 2018.  The Appeals Council (AC) remanded the decision in October 2019, a telephonic second hearing was held in July 2020, and an ALJ issued another unfavorable decision in August 2020.  The AC remanded that decision in March 2021 as the August 2020 decision invaded a prior period of disability (the period prior to December 1, 2012).  Yet another telephonic hearing was held in July 2021, and a partially favorable decision was issued in August 2021 finding Richard disabled on February 1, 2021 and continuing through the date of the decision.  The AC remanded that decision in February 2022 because the decision contained an error of law and did not explain the basis for finding limitations in Richard's ability to stand and walk.

In its February 2022 remand order, the AC vacated the entire hearing decision, including the favorable portion, such that the ALJ tasked with completing further proceedings had the full authority and jurisdiction to re-evaluate Richard's disability status from February 8, 2015 to the then-present.  A fourth hearing was held telephonically before a third ALJ (David W. Thompson) on August 17, 2022 at which Richard was represented by an attorney and Richard and a fourth vocational expert testified.[2]  The ALJ suggested at the hearing that Richard's wife could submit a written statement after the hearing given that it had already been going on for close to an hour and a half and the VE had not yet testified; Richard's attorney agreed to have Richard's wife submit a written

---

[2] At the earlier three hearings on his 2016 applications, Richard, his wife, and a vocational expert (a different one each time) testified.

statement.  Following that hearing, Richard's claims were denied on October 5, 2022.  AR 97.  His request for review by the AC was denied on February 8, 2023, making ALJ Thompson's 2022 Decision the final decision of the Commissioner.  AR 1.  Richard timely filed the instant civil action seeking review of the ALJ's Decision on April 11, 2023.

## II

Richard argues the ALJ committed the following errors:  1) the ALJ failed to give good reasons for assigning a treating physician's longitudinal opinion very little weight, as it warrants controlling weight under the treating physician rule; 2) the ALJ erred as he failed to give good reasons for giving a second treating physician's longitudinal opinion little weight, as it warrants controlling weight pursuant to the treating physician rule; 3) the ALJ erred in dismissing the specialized opinions of Carle Brain and Spine Institute physical medicine and rehabilitation specialists; 4) the ALJ failed to properly assess Richard's standing/walking limitations and fatigue in light of the narrative requirements of 96-8p and the credibility requirements of 16-3p; and 5) the credibility assessment is patently wrong.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence.  *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989).  Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision."  *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper

legal standards were applied.  *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability.  *See* 20 C.F.R. § 404.1566; 20 C.F.R. § 416.966.[3]  The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).  Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980).  The factual determination is made by using a five-step test.  *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1)      is performing substantial gainful activity;

2)      suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

---

[3] *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

3)      suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4)      is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5)      is unable to perform any other work existing in significant numbers in the national economy.

*Id*.  An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four.  *Id*.  However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment.  *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Richard claims error on the ALJ's part at Step Four.

## A

The ALJ first determined Richard met the insured status requirements of the Social Security Act through March 31, 2018.  AR 37.  At Step one, the ALJ determined Richard had not engaged in substantial gainful activity since February 8, 2015, the amended alleged onset date.  *Id*.  At Step Two, the ALJ determined Richard had the following severe impairments:  degenerative disc disease of the lumbar and thoracic spine, status post multiple surgeries with a fusion at L5-S1; history of right tibia and fibula fracture s/p ORIF; arthritis of the bilateral hips and bilateral knees; degenerative joint disease with tears of the bilateral shoulders; and history of malignant neoplasm of urinary bladder.  *Id*.  At Step Three, the ALJ determined Richard did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  AR

56.  At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except no more than occasional climbing of ramps, stairs and ladders; no climbing of ropes and scaffolds; and no more than occasional overhead reaching bilaterally. Furthermore, the jobs must involve simple, routine tasks; little change in the job process from day to day; and no more than occasional work-related interaction with the public, co-workers, and supervisors.

AR 58.  The ALJ determined Richard had no past relevant work.  AR 95.  At Step Five, the ALJ determined that considering Richard's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Richard could perform.  AR 96.  Therefore, the ALJ concluded Richard had not been under a disability from February 8, 2015 through the date of the Decision, October 5, 2022.  AR 97.

**B**

In his 66-page Decision, the ALJ devoted much of it to detailing treatment notes, examination findings, and imaging results between 2015 and 2022.  The ALJ additionally detailed Richard's self-reports as to his limitations and functioning, his wife's reports as to his limitations and functioning, the treatment Richard received, and the array of health issues for which he sought treatment.  Against that backdrop, the ALJ confronted several opinions, including the opinions provided by two of Richard's treating sources.  Dr. Travis W. Swink, Richard's primary care provider (PCP), wrote a letter dated July 27, 2016:

> Richard L [sic] [F.] has suffered from many illnesses over the course of his time as my patient.  Richard has a rotator cuff tear that has not been repaired and subsequent chronic distal fracture of the left clavicle that causes pain when raising left arm.  Richard has DDD of lumbar spine that limits ability to stand for any period of time and makes it impossible to lift in any capacity.  Richard is currently having

issues with bladder cancer and in combination with treatment and disease this causes daily pain of all joints. Combined with his bipolar depression I do not believe Richard could work in any capacity at this time or in the future.

AR 71 (citing AR 1133). Dr. Maulin G. Shah, Richard's later PCP, wrote a letter dated December 13, 2018:

> Richard [F.] is a previous patient of Dr. Swink what [sic] began treating on 09/23/2016. In reviewing past medical records, Mr. [F.] underwent six back surgeries and a right leg surgery. As of 09/4/2015, progress notes document chronic back pain with associated numbness and tingling down right leg. Despite having undergone the multiple back surgeries, undergoing multiple therapies, experimenting with an intrathecal pump and implementation of a spinal cord stimulator, undergoing various types of injections, and trying various medications, his persistent symptoms remain severe ranging from a level of 5-9/10. Since that time, Mr. [F.] has reported being limited in the ability to sit, stand, and walk. A lumbar x-ray performed on 07/07/2016 demonstrated severe disc narrowing and degenerative changes consistent with his chronic pain complaints and limitations. By my review of medical records and by patient's reported history, it is my opinion that since at least 09/04/2015 that Mr. [F.] would not have the physical stamina to make it through an 8 hr workday. At best, he may be able to work a 4 hr day that would allow him to sit and stand as needed and would further allow him to take multiple unscheduled breaks as needed.

AR 78 (citing AR 1905).

Richard argues the ALJ gave no weight to Dr. Swink's and Dr. Shah's opinions without adequately analyzing those opinions pursuant to the treating physician rule.[4] That rule is as follows: "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial

---

[4] The treating physician rule applies here as 20 C.F.R. § 404.1527 applies to claims filed before March 17, 2017.

evidence in the record." *Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018); 20 C.F.R. § 404.1527(c)(2). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

**1**

With regard to Dr. Swink's July 2016 opinions, Richard underscores the doctor's longitudinal perspective as well as the "plethora of physical examination evidence" and diagnostic imaging Dr. Swink ordered that showed progression of Richard's degenerative disc disease as indicative of the ALJ's erroneous application of the treating physician rule. The Commissioner argues the ALJ explained why he gave Dr. Swink's opinion "very little weight" for several reasons he articulated and which a reasonable mind could accept as adequate support for the ALJ's conclusions.

The ALJ determined Dr. Swink's July 2016 opinions were "not entitled to 'controlling weight,' as his opinions are not well supported by the evidence of record, including his own treatment records." AR 72. The ALJ gave the following reasons: 1) the opinion that Richard was unable to work in any capacity at that time or in the future was an opinion reserved to the Commissioner; 2) the combined impact of bipolar depression and Richard's physical impairments on his ability to work was not supported by record evidence; 3) some of Dr. Swink's statements were vague; and 4) Dr. Swink did not establish that Richard's lumbar degenerative disc disease imposed the significant functional limitations he alleged but rather the doctor just made an assertion for which he provided no support. *Id*. The ALJ continued, stating Dr. Swink's assertion that Richard's bladder cancer and treatment for it caused him daily joint pain was contradicted by urology visits

between May 2016 and October 2016 which provided Richard was alert and not in any distress, he displayed normal gait and posture without peripheral weakness or decreased range of motion, he had normal strength, sensation, and reflexes throughout, and he displayed normal attention span and ability to concentrate. *Id.* He reasoned, "These examinations do not suggest daily joint pain, certainly not to a degree that would be appreciably limiting." *Id.* The ALJ explicitly stated his overall rationale for finding that Dr. Swink's opinions were not entitled to controlling weight:

> [T]he repeated examination findings of normal gait, posture, range of motion, strength, sensation, and reflexes are inconsistent with Dr. Swink's assertions that the claimant was unable to stand for any period and that it was "impossible [for the claimant] to lift in any capacity." While the claimant's combination of severe impairments limits his functional abilities, the evidence of record does not support the degree of limitation alleged by Dr. Swink in his letter.

*Id.* Citing normal examination results in the months after Dr. Swink authored his July 2016 letter, the ALJ noted those examinations did not substantiate the significant degree of functional limitation Richard alleged. AR 73.

The ALJ certainly provided the requisite "sound explanation for the rejection" of Dr. Swink's opinions. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). As one example of the ease with which the Court can trace the path of the ALJ's reasoning (his "sound explanation") is his earlier explanation for why Dr. Swink's opinion that the combination of physical impairments and bipolar depression precluded Richard from working was deserving of "essentially no weight." AR 47; *see Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). There, the ALJ observed that treatment records

9

from Dr. Swink between January 2015 and July 2016 did not document complaints of any significant mental illness symptoms due to any mental impairments and instead documented Richard was alert, oriented in all spheres, cooperative, and not in any acute distress. AR 47-48. As another example, the ALJ earlier addressed Richard's July 2016 lumbar spine x-rays and MRI which, revealed, respectively, progression compared to prior study but "no acute abnormality was visualized" and "mild spondylosis at L4-5 and stable post-surgical changes of the posterior lumbar interbody fusion at L5-S1, but no acute abnormality was demonstrated" and the "nerve roots of the cauda equina [were] distributed normally within the thecal sac." AR 71.

The ALJ did not, in the context of his consideration of Dr. Swink's opinion, expressly recognize the length of the treatment relationship, but the ALJ's recitation of Dr. Swink's treatment records throughout his Decision indicates it factored into his analysis. His later reference to the fact that Richard continued to see Dr. Swink as his PCP later in 2016 and in 2017 only bolsters the fact he considered the length of their treatment relationship. AR 79. The ALJ also did not fail to grasp that Richard's back impairment was "degenerative" where he observed "[i]t is certainly possible that between November 2014 and July 2016, the claimant's spinal condition worsened, and his physical abilities became more limited." AR 72. In the very next sentence, the ALJ highlighted a valid reason to reject a treating physician's opinion under § 404.1572(c) – Dr. Swink provided no support. *Id*.

The ALJ did not just cite and consider normal examination findings; he considered Richard's counsel's citations to range of motion limitations and examinations that revealed limited range of motion of the back in 2015 and 2016. AR 67, AR 69, AR 71. The ALJ also juxtaposed limited range of motion findings in his back, right lower extremity, and shoulder with the fact that Richard

10

simultaneously had normal strength and tone, normal coordination and gait, and normal reflexes. AR 69, AR 71. The ALJ cited examinations during which Richard displayed no peripheral weakness or tenderness in the extremities. AR 70, AR 71, AR 72, AR 73. The Court would have to reweigh the evidence to find in Richard's favor in this regard, but it cannot do so. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (explaining the court may not, among other things, reweigh the evidence or substitute its judgment for the ALJ's determination). Even so, reweighing the evidence would not change the fact that substantial evidence supports the ALJ's conclusion as to Dr. Swink's opinions. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("substantial evidence . . . means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). For that reason, the fact that the ALJ favored the State Agency physicians' opinions over that of treating Dr. Swink causes this reviewing Court no concern. *See Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record").

### 2

With regard to Dr. Shah's December 2018 opinions, Richard argues a doctor's professional training and experience would have taught him how to discount exaggerated statements by his patients, the ALJ made his own independent medical findings, and Dr. Shah had the longitudinal treatments notes from Dr. Swink and his personal insight dated back to September 23, 2016 such that his opinion was well-informed. The Commissioner counters the ALJ did not impermissibly play doctor when he did as was required of him and considered the supportability and consistency of Dr. Shah's opinions.

In finding Dr. Shah's opinions not entitled to "controlling weight" and instead "worthy of very little weight," the ALJ provided several reasons. AR 79.

11

First, he stated Dr. Shah portrayed his treatment history with Richard as being more extensive than it was; Richard's visit with him on September 23, 2016 was an isolated occasion and it was not until May 7, 2018 that Dr. Shah took over as Richard's PCP.  *Id*.  Dr. Shah's ongoing treatment relationship with Richard had only lasted seven months as of the time he rendered his opinions.  *Id*.  Second, whereas Dr. Shah cited July 2016 lumbar spine x-rays as specific medical evidence to support his opinion as to Richard's significant limitations, Dr. Shah did not mention the lumbar spine MRI performed in July 2016 (which showed no acute abnormality and a "mild" finding) and failed to identify what he saw in medical records to support the opined-to limitations.  *Id*.  Third, the referenced September 2015 progress note from a pain clinic included examination findings which did not substantiate the opined-to limitations, and that isolated visit more than three years earlier "would not substantiate the alleged significant functional deficits as being present currently."  *Id*.  Fourth, as of the date Richard established care with Dr. Shah and examination revealed limited range of motion of the right lower extremity with slight reduction in strength as well as obesity and elevated blood pressure, such findings did not substantiate the opined-to limitations.  *Id*.  Fifth, when Richard's October 2018 examination revealed mild spinal tenderness to palpation, it also revealed normal motor strength and tone of the upper extremities.  *Id*.  Sixth, when Richard requested referral to pain management for his chronic pain in December 2018, Dr. Shah did not even examine his spine and examination again revealed normal results as to the extremities.  *Id*.  Lumbar spine x-rays from that day revealed the previous fusion and mild bony changes of intervertebral disc disease at L4-5.  *Id*.  The ALJ summarized, "Nothing in Dr. Shah's treatment notes comes anywhere close to supporting the degree of functional limitations he alleges in his letter."  *Id*.

12

The ALJ more than minimally articulated his reasons for rejecting Dr. Shah's opinions. *See Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (explaining an ALJ may discount a treating physician's medical opinion if the opinion is inconsistent with the opinions of a consulting physician or when the treating physician's opinion is internally inconsistent, "as long as he minimally articulates his reasons for crediting or rejecting evidence of disability"). It was not off limits for the ALJ to mention the fact that Dr. Shah proceeded to set forth Richard's subjective allegations of his pain levels, lack of effectiveness of treatment, and exertional limitations. *See Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018) ("An ALJ can give less than controlling weight to medical opinions based on subjective reports and can even reject a doctor's opinion entirely if it appears based on a claimant's exaggerated subjective allegations"). The ALJ did not so much as make his own independent medical findings, as he compared and contrasted documented chronic back pain, imaging results which revealed degenerative disc disease, imaging results listing "mild" findings and "no acute abnormality," physical examination findings that were "normal" and that showed only "slight" reduction in strength, and a *lack* of citation to specific medical evidence by Dr. Shah to support the doctor's opined-to limitations. *See, e.g., Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (explaining the ALJ "thoroughly discussed the medical evidence in making her decision" rather than play doctor).

## C

Richard argues not only that the ALJ failed to properly apply the treating physician rule, but that the ALJ failed to properly consider the opinions rendered by Physical Therapist Madison Bayler on February 18, 2020 and Dr. Victoria J. Johnson of the Carle Spine Institute on February 19, 2020 pursuant to § 404.1527(c). Specifically, Richard argues their opinions were specialized, the ALJ improperly discounted them because based on Richard's subjective statements, and Richard

otherwise points to evidence supportive of their opinions.  The Commissioner argues the ALJ reasonably weighed the opinions and gave several valid reasons for the weight he assigned the opinions.

1

PT Bayler stated Richard's performance on evaluation equated to rare reaching and handling, he could rarely lift or carry a maximum of eight pounds, he was functioning below a sedentary physical demand level, and he required to be reclined a good amount of the day to even slightly control pain levels.  AR 83 (citing AR 1975, 1976).  She thought it would be very difficult for Richard to compete in any type of work environment.  *Id*.  The ALJ determined PT Bayler's opinions were entitled to "limited weight."  AR 84.

The ALJ reasoned that while Bayler connected functional limitations to examination findings (unlike the treating physicians), her report suggested that some ability ratings "may be based solely on client self-reports."  AR 84.  The ALJ illustrated the point by stating that certain statements by Bayler referenced neither observed limitations or otherwise identified specific objective support for Richard's reported limitations, and one statement was a direct recitation of Richard's self-report.  *Id*.  Referring to contemporaneous medical records as support, the ALJ reasoned that evidence of record suggested Richard exaggerated some of his problems.  The ALJ next highlighted a discrepancy between PT Bayler's statements of limitation and the fact that no treating provider and no other evaluating provider documented such limitations.  *Id*.  Further, the ALJ cited several examination results since January 2015 that revealed normal motor strength, coordination, and gait as unsupportive of Richard's claimed need to use his arms to help push himself up from a seated position.  *Id*.  The ALJ explained why records from other providers failed to support the extent of restriction Bayler assessed.  *Id*.  He commented that Richard's report to an orthopedist of increased

14

shoulder pain with any overhead or repetitive-type activity implied he was engaging in some type of repetitive use of the shoulders/arms at times. *Id*. He highlighted there was no explanation for how a maximum weight limit of eight pounds was determined. *Id*. Finally, "[W]hile this evaluation was intended to be a functional ability assessment, the report from PT Bayler contains no discussion regarding the validity of the claimant's effort on testing. There is no indication that PT Bayler performed any type of validity testing to verify that the claimant was putting forth good effort." *Id*.

The ALJ did not commit reversible error in his application of 20 C.F.R. § 404.1527(c) to PT Bayler's opinions. *See* 20 C.F.R. § 404.1527(f)(1) (providing that opinions provided by medical sources who are not acceptable medical sources are considered using the same factors as listed in § 404.1527(c)(1) through (6)). The ALJ did not misinterpret or inaccurately cite the record evidence he relied upon in drawing his conclusions, and he certainly did not assign the weight he did without any meaningful articulation. *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) ("All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review"). As discussed above, the ALJ did not commit legal error in his consideration of PT Bayler's opinions where he gave them only limited weight, in part, because Bayler relied heavily on Richard's subjective statements. *See Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("medical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints"). Of significance, as the Commissioner argues, Richard does not dispute the ALJ's finding that PT Bayler's opinions were inconsistent with his physical examination findings documented in other treatment records during the period at issue.

**2**

Dr. Johnson of the Carle Spine Institute completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) as to Richard.  She opined he could:  rarely lift and carry up to eight pounds due to significant lower back and hip pain and limited strength and endurance; sit for 15 minutes at one time and two hours total in an eight-hour workday; stand for 15 minutes at one time and an hour total in an eight-hour workday; could rarely reach in any direction, handle, push or pull, and occasionally finger and feel with either upper extremity due to left should pain and limited left shoulder range of motion and strength; could rarely operate foot controls as testing strength in the feet really caused increased bilateral hip and lower back pain; and could rarely climb ramps and stairs with use of a handrail and could never climb ladders or scaffolds, balance, stoop, kneel, crouch, and crawl, all of those limitations due to significant balance deficits, pain in the low back and hips, and weakness.  AR 85 (citing AR 1980-84).  As for what Richard remained able to do, Dr. Johnson opined Richard could, among other things:  ambulate without use of a wheelchair, walker, two canes, or two crutches; climb a few steps at a reasonable pace with the use of a single handrail; prepare a simple meal and care for his personal hygiene.  *Id*. (citing AR 1985).

The ALJ determined Dr. Johnson's opinions were entitled to limited weight.  AR 85.  He began by noting many of her opinions appeared to be based upon PT Bayler's evaluation, and he reiterated why the opinions in Bayler's evaluation report were entitled to limited weight.  *Id*.  The ALJ then specified his various additional reasons for rejecting Dr. Johnson's opinions:  she provided no objective rationale and instead set forth Richard's subjective statements; her own examination of Richard on January 7, 2020 did not reveal objective findings that would substantiate the degree of limitation she set forth; there did not appear to

be support for some of her statements in either her own treatment note or PT Bayler's examination; and, referencing an earlier discussion of the medical record in the Decision, the ALJ explained the medical records in general did not document balance deficits and "certainly not as an ongoing or regular problem." AR 86. The ALJ added: Dr. Johnson's January 2020 examination did not support the significant manipulative limitations she indicated, especially where she did not actually examine Richard's upper extremities; Dr. Johnson was a spine specialist who performed a one-time evaluation of Richard's spinal complaints and the next time she saw him was months after she completed the Medical Source Statement; and, in lastly, "Other alleged limitations could be addressed and discounted as not consistent with the overall evidence of record but suffice it to say that many of the opinions expressed by Dr. Johnson cannot be supported by her examination of the claimant or by the medical evidence more generally." *Id.*

As for Richard's emphasis upon Dr. Johnson's specialty, the ALJ provided good reason for why the fact of her specialty factored so little (a one-time evaluation and many of her opinions appeared based upon PT Bayler's problematic evaluation). As for Richard's suggestion Dr. Johnson's subsequent October 2020 treatment note bolstered her earlier opinions where she wrote Richard "looked miserable," the ALJ acknowledged that very notation in his Decision. AR 87. In the same sentence, he noted, "This was one of the rare examinations where the claimant was noted to be in distress/discomfort in general . . . and with typical movements (standing up from a seated position) . . . but even this examination revealed relatively limited 'positive' findings – 'mild' tenderness, 'minimal' radicular symptoms on the left, etc." *Id.* Indeed, as the Commissioner offers, a reasonable mind could accept the ALJ's conclusion that the abnormal findings at Richard's October 2020 visit with Dr. Johnson – considered alongside other treatment records documenting full strength, no muscle atrophy, normal

17

gait, intact coordination, normal reflexes, and tenderness to palpation in the back – did not support Dr. Johnson's extreme opinion that Richard could walk only two minutes and stand only 15 minutes at a time.

### D

Next, Richard argues the ALJ assessed a light RFC without any additional standing or lifting restrictions without a narrative explanation in violation of the requirements of SSR 96-8p and the credibility requirements of SSR 16-3p.[5]  The Commissioner argues the ALJ thoroughly reviewed Richard's longitudinal treatment records, reviewed his physical examination findings, cited specific medical facts, and generally agreed with and adopted the restrictions opined to by the State Agency reviewing physicians and found Richard more limited than they did.  The Commissioner further contends the ALJ fulfilled his duty to weigh the conflicting record evidence and drew reasonable inferences from that evidence, and the Plaintiff identifies no material evidence the ALJ overlooked or misconstrued and merely disagrees with the ALJ's weighing of the evidence.

The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8p, at *7.  Bearing that in mind, the Court agrees with the Commissioner on each point he asserts.  First, to the extent Richard argues the medical opinions of record reveal a shortcoming in the ALJ's light RFC assessment, the argument is unconvincing for the reasons set forth above as to those opinions.  Second, the Decision is replete with citations to normal and negative examination findings, equal attention paid to both Richard's and his wife's statements of his pain and limitations *and* evidence that undermined those

---

[5] The Court reserves consideration of the ALJ's application of SSR 16-3p to the following section (Section E), as Richard separately argues the ALJ's credibility assessment was patently wrong.

statements, the medications Richard took and their efficacy, the treatments Richard sought (or declined) and their success or failure, images taken and any progression of conditions reflected therein, the *absence* of ongoing complaints as to some health issues, and discrepancies in what Richard reported and what medical records documented. *See* 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record").

The ALJ expressly reasoned that considering Richard's spinal impairments, lower extremity impairments, and excess weight, it was reasonable to limit him to occasional climbing of ramps, stairs and ladders.[6] AR 90-91. He expressly reasoned that the combination of Richard's spinal impairments, lower extremity impairments, shoulder impairments, excess weight, and any element of distraction due to pain, tiredness, and/or mental impairments would support no climbing of ropes or scaffolds. AR 91. Noting Richard's repeated complaints of difficulty with overhead reaching, especially on a repetitive basis and especially with the left shoulder/upper extremity, and problems reaching overhead with the right shoulder/upper extremity, the ALJ found it would be appropriate to limit Richard to no more than occasional overhead reaching bilaterally. *Id*. He stated he did not find the evidence substantiated the imposition of any other non-exertional physical limitations. *Id*. The ALJ expressly stated, "While the claimant and his wife have reported that he has significant difficulty with other postural and manipulative activities than climbing and overhead reaching, the undersigned does not find the evidence supports any additional postural or manipulative restrictions." *Id*. Still further, the ALJ expressly reasoned that medical records did not substantiate any appreciable limitation in handling, fingering, or feeling, and

---

[6] Of note, the ALJ engaged in a detailed explanation for why he "generally [found] it more appropriate to group climbing of ladders with climbing of ramps and stairs." AR 90.

that with respect to reaching, complaints of shoulder pain had been more prominent in recent years, but Richard received good response from injections and continued to postpone surgery. *Id.* The ALJ explained that based upon the combination of Richard's mental impairments and the chronic pain and tiredness resulting from his physical impairments as well as possible tiredness from some of his medications, Richard would do best in a work setting that involved simple and routine tasks, little change in the job process from day to day, and no more than occasional work-related interaction with the public, coworkers, and supervisors. AR 92.

As for the "requisite explanation of the dismissal of Richard's inability to maintain his standing posture and his need for breaks during the day" (Richard's argument), that can be found over the course of three pages toward the end of the ALJ's Decision (plus the bulk of pages preceding those). AR 92-94; *see Morales v. O'Malley*, No. 23-2796 (7th Cir. May 31, 2024) ("ALJs are subject to only the most minimal of articulation requirements – an obligation that extends no further than grounding a decision in substantial evidence") (internal quotations omitted). The Court highlights the following: "The medical records since February 2015 support a conclusion that a limited range of light work is still reasonable." AR 93. "While the claimant portrays himself as not capable of doing much of anything due to severe pain and physical limitations, the physical examinations are often normal, other than obesity, with numerous examinations revealing no acute distress . . . and even some examinations, including more recently, with normal range of motion of the extremities." *Id.* "[M]ost examinations reveal that the claimant is not in any acute distress and many of the examinations reveal normal or nearly normal musculoskeletal and neurologic function." *Id.* The Court also highlights:

> [T] examination findings contradict the claimant's hearing testimony
> that he was unable to walk or move prior to the injections. This is one

of multiple examples of the claimant alleging a degree of physical or mental impairment in hearing testimony or on disability paperwork that is not supported by, and often far exceeds what is demonstrated by the objective medical evidence.

AR 94. "As noted above, the undersigned finds the evidence supports a conclusion that the claimant can stand and/or walk for up to six hours of an eight-hour workday, as would be typical of light work." *Id*. "Overall, even giving the claimant all reasonable benefit of the doubt, he has been able to perform a limited range of unskilled socially undemanding light work since his amended alleged onset date of February 8, 2015." *Id*. Quite clearly, the ALJ did not simply assign Richard a light RFC without exposition but rather discerned – for reasons set forth and supported by substantial record evidence – that Richard was capable of light exertion work with specific postural restrictions, reaching restrictions, and mental restrictions.

**E**

Finally, Richard takes issue with the ALJ's credibility assessment, arguing that the ALJ erroneously concluded the degree of limitation alleged was not supported by the objective medical evidence, and an individual's statements about the intensity and persistence of pain or other symptoms may not be disregarded solely because not substantiated by objective medical evidence. The Commissioner disputes the ALJ's subjective symptom evaluation was patently wrong where the ALJ did not discount Richard's subjective symptoms based solely upon the objective medical evidence, and Richard otherwise disagrees with the ALJ's weighing of the evidence.

SSR 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms and also the factors set forth in 20 C.F.R. §

404.1529(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. SSR 16-3p, at *7-8. Here, the ALJ sufficiently addressed the various factors.

As the Commissioner points out, the ALJ considered Richard's course of treatment, improved symptoms with treatment, refusal to undergo recommended treatment, and inconsistent statements. *See, e.g.*, AR 77 (citing AR 2212), AR 81 (citing AR 2218), AR 84, AR 87 (citing AR 2225), AR 88 (citing AR 2235, 2243), AR 89 (citing AR 2257), AR 91-2 (citing AR 2252), *and* AR 93. In fact, the SSR 16-3p factors can be checked off one by one as the ALJ's Decision is read in its entirety. Richard has taken a myopic view of the ALJ's reasoning for his conclusions set forth in his 66-page Decision. Some evidence favored Richard – that evidence actually being discussed in the Decision – but substantial evidence favored a non-disability finding (see Section IIIB-D above). *See Gedatus*, 994 F.3d at 902 ("So even if there is some evidence that the 2013 MRI was not normal in the relevant respects, there is also substantial evidence that it was, and, in any event, substantial evidence that any abnormalities the 2013 MRI might have shown did not disable [the claimant] for social security purposes. And that is all we require to affirm"). With regard to the objective medical evidence *alone*, as set forth above at length, the ALJ cited as support for his conclusions the numerous normal and negative examination findings throughout the period under review. He made no error: "[T]the lack of objective support from physical examinations and test results is still relevant even if an ALJ may not base a decision solely on the lack of objective corroboration of complaints of pain." *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir.

2014).  Richard's argument that the ALJ's credibility assessment lacked any explanation or support is unconvincing where he failed to cite material medical evidence the ALJ overlooked, misconstrued, or otherwise brushed off without adequate explanation.  *See Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (explaining "patently wrong" means the decision lacks any explanation or support).

Put bluntly and finally, Richard's allegations of legal error miss the mark. Remand is not warranted in this case.  As already noted, *supra,* while one could envision an ALJ weighing the evidence differently in this case, "ALJs are subject to only the most minimal of articulation requirements – an obligation that extends no further than grounding a decision in substantial evidence."  *Morales v. O'Malley*, No. 23-2796 (7th Cir. May 31, 2024) (internal quotations omitted).  The ALJ's decision in this case more than minimally articulates the basis of his decision.  *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("We have repeatedly stated . . . that an ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability").

## IV

For the reasons set forth above, it is recommended that:  1) the Commissioner's decision denying the Plaintiff's applications for disability insurance benefits and supplemental security income be affirmed; 2) the Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Martin O'Malley, Commissioner of Social Security, denying benefits to the Plaintiff, Richard F., is AFFIRMED."; and 3) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation.  FED. R. CIV. P. 72(b)(2); 28 U.S.C.

§ 636(b)(1).  Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on June 11, 2024.

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE